525 A.2d 15

James K. Brumbach, III, Appellant v. Pat Weaver, Appellee.

Argued April 24, 1987, before Judge PALLADINO and Senior Judges KALISH and NARICK, sitting as a panel of three.

*Robert M. Cravitz,* with him, *John R. Moore, Moore & Cravitz,* for appellant.

*Jeffrey Apfelbaum, Apfelbaum, Apfelbaum & Apfelbaum,* for appellee.

OPINION BY JUDGE PALLADINO, April 29, 1987:

James K. Brumbach, III (Appellant) appeals an order of the Northumberland County Court of Common Pleas striking his nomination petition for the office of mayor of the city of Sunbury on the Democrat primary ballot. We affirm.

Appellant filed his nomination petition, with 125 signatures, on March 10, 1987. On March 17, 1987, Pat Weaver (Appellee), who had filed her nomination petition for the same office on February 27, 1987, filed an objection to Appellant's petition. Appellee's objections were: (1) several Democratic voters signed Appellant's petition after having signed hers; (2) several signers were Republicans; (3) several signers were not registered voters when they signed; and (4) several signatures were forged.

After a hearing, on March 20, 1987, the trial court found that: (1) Appellant had stipulated that 2 signators on Appellant's petition were not Democrats and 20 signed Appellee's petition prior to Appellant's and (2) the evidence established that 20 signators were not registered on the date they signed. This left a petition with only 83 valid signatures; 100 were needed. Because less than the required number of signatures then remained, the trial court did not rule on the signatures alleged to be forged and ordered Appellant's name to be stricken as a candidate for mayor of the city of Sunbury.

On appeal to this court, Appellant raises three questions of law. He contends that: (1) because there is no evidence in the record that the county board of elections (board) was served with a copy of Appellee's objection petition, the trial court did not have personal jurisdiction over the board and, therefore, could not order it to strike Appellant's name as a candidate; (2) the trial court improperly relied on an unsigned circulator's affidavit to find that 20 individuals signed Appellee's nomination petition prior to his; and (3) individuals should be considered registered voters on the date when their mail-form voter registration applications are received by the county registration commission (commission). We will address Appellant's arguments seriatim.

## JURISDICTION

Section 977 of the Election Code,[1] in pertinent part, states:

> All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, unless, within seven days after the last day for filing said nomination petition or paper, a petition is presented to the court specifically setting forth the objections thereto, and praying that the said petition or paper be set aside. *A copy of said petition shall, within said period, be served on the officer or board with whom said nomination petition or paper was filed.*

(Emphasis added.) Appellant argues that unless the board is served within seven days of the filing of the objection petition, the trial court does not have personal jurisdiction over the board and may not order it to strike his name.

Even assuming that service of the objection petition on the board is a personal jurisdiction requirement, Appellant is precluded from raising that issue for the first time on appeal. Pa. R. A. P. 302 states: "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Appellant contends that he has not waived this defense because it is jurisdictional. However, only subject matter jurisdiction, not personal jurisdiction, falls within this exception to waiver and Appellant argues personal jurisdiction.

## UNSIGNED CIRCULATOR'S AFFIDAVIT

Appellant argues that since Appellee's nomination petition (which 20 of the signatories on her nomination

---

[1] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §2937.

petition had signed prior to signing his) *could*[2] have been objected to because the circulator's affidavit, although notarized, had not been signed,[3] it was "unfair" to allow it to be used to challenge his nomination petition. We need not decide this issue because the trial court found, and the record so indicates, that Appellant *stipulated* that these 20 signatories had signed Appellee's nomination petition prior to his.[4] Therefore, the trial court did not err in invalidating the signatures.

## TIME OF REGISTRATION

The most significant and novel issue is the one relating to twenty signatures on Appellant's nomination petition which were invalidated because the trial court found that the signatories were not enrolled as registered voters at the time they signed the petition. Eighteen of these signatures belong to individuals whose mail voter registration applications had been *received* by the commission on March 10, 1987, the same day as the individuals had signed Appellant's nomination petition. Appellant contends these individuals should be considered as registered on the date their applications were received.

Section 17.1 of The Permanent Registration Act for Cities of the Second Class, Cities of the Second Class A, Cities of the Third Class, Boroughs, Town, and Townships (Act)[5] allows qualified electors to register with the commission by mail and specifies that "registration is

---

[2] Since the time for objection has passed, Appellee's nomination petition is deemed valid. *Id.*

[3] We note that the Election Code does not require the circulator's affidavit to be signed.

[4] N.T. at 8.

[5] Act of April 29, 1937, P.L. 487, *as amended,* added by Section 1 of the Act of July 1, 1979, P.L. 504, 25 P.S. §951-17.1.

not complete until the application is processed and accepted by the commission." Section 18(f) of the Act,[6] entitled "[m]anner of registration," requires the commission to inform an applicant of "the fact of registration" and "the date thereof" when the application "has been finally processed and accepted."

No time limit is specified in the Act in which the commission must process and accept an application for voter registration. However, the Act does direct the commission to send a notification card (which is part of the mail application) to the applicant within three days of receipt, in order to inform the applicant that "his application form has been received and is being processed by the county registration bureau."[7] Appellant argues that since the Director of Elections and Registration for Northumberland County testified that the commission's *normal* procedure was to process and accept all applications on the date received,[8] those individuals whose applications were received on the day they signed his nomination petition should have been considered as registered electors on that date. We find no merit in this argument.

Appellant's argument presumes that all applications will be accepted. The Act does not so provide. In fact, Section 18.3(d) of the Act[9] provides that: "If the application card is not in compliance with this Act the commission shall mark 'REJECTED' on the application form together with the reason for rejection and return same to the applicant. . . ." Obviously, there are times when the commission's work load will be heavier than normal and more time than usual will be required to process the

---

[6] 25 P.S. §951-18(f). Sunbury is a third class city.

[7] 25 P.S. §951-17.1.

[8] N.T. at 31.

[9] Added by Section 5 of the Act of July 1, 1979, P.L. 504, *as amended,* 25 P.S. §951-18.3(d).

applications, as the Director testified was the situation on March 10, 1987.[10] The trial court did not err in finding these individuals were not enrolled as registered voters at the time they signed Appellant's nomination petition.

In accord with the foregoing analysis, the order of the trial court is affirmed.

ORDER

AND NOW, April 29, 1987, the order of the Northumberland County Court of Common Pleas in the above-captioned matter is affirmed.

Senior Judge KALISH concurs in the result only.

---

[10] N.T. at 31.