516 A.2d 29

**Charles A. ROSS, Appellant,**

**v.**

**MONTOUR RAILROAD CO. and Pittsburgh Lake Erie Railroad.**

Superior Court of Pennsylvania.

Argued June 25, 1986.

Filed Sept. 8, 1986.

Reargument Denied Oct. 24, 1986.

Charles W. Robinson, Pittsburgh, for appellant.

Richard D. Klaber, Pittsburgh, for appellees.

Before ROWLEY, McEWEN and TAMILIA, JJ.

## OPINION OF THE COURT

ROWLEY, Judge:

This is an appeal from an order refusing to take off a compulsory non-suit entered at the close of appellant's case before the jury.

On April 27, 1983, appellant filed a complaint in assumpsit and trespass against appellees, Pittsburgh and Lake Erie Railroad (P&LE) and Montour Railroad, a subsidiary of P & LE, alleging breach of an employment contract and wrongful discharge from employment. At the conclusion of appellant's case on liability at trial, the court granted appellee's Motion for a compulsory Non-Suit. Appellant's Motion to Remove Compulsory Non-Suit and Grant a New Trial was denied.

The factual background of this case is as follows. Appellant worked for Montour for a total of 22 years, during which time he was admittedly a productive and competent employee. Appellant was successively promoted, having started as a mechanic, and eventually rising to assistant superintendent in 1981. Unfortunately for appellant, business began to steadily decline, resulting in a massive employee reduction. In February of 1983 appellant was furloughed as assistant superintendent and bumped back into a union position as a machinist-welder. Appellant's employment with Montour ended in September of 1984 when he walked off the job and did not return.

The controversy in this case concerns events which commenced in December of 1980, when appellant, then Trainmaster-General Foreman of Montour, had a meeting with T.C. Netherton, President of Montour and Vice-President of P & LE. At that meeting, Netherton informed appellant that the superintendent of the Montour railroad was resign-

ing and that Robert Costello, an employee of P & LE in Ohio, was being transferred in as superintendent. Netherton told appellant that Costello's position as superintendent was temporary, perhaps 3 to 5 months, after which Costello would move on to another position with P & LE and appellant would become superintendent. At the same time, appellant was promoted to assistant superintendent, a newly created position, and given a $3,000 a year raise. However, events did not go as planned, and Costello remained as superintendent from 1981 until at least the time of trial. In February of 1983 appellant was furloughed from his position as assistant superintendent. After his furlough, appellant "bumped" back to a position as machinist-welder. He continued to work as a welder until September of 1983 when he left his job following a dispute over the quality of his work.

On appeal, appellant raises six issues for review. In brief, appellant argues that Netherton's promise of promotion was an enforceable employment contract for a specified duration. In the alternative, appellant argues that the rule of at-will employment should not apply here, and that he has a cause of action in tort for wrongful discharge.

Our scope of review is such that the entry of a non-suit will be upheld only in a clear case where the facts and circumstances have as the only conclusion the absence of liability. *McKenzie v. Cost Bros.*, 487 Pa. 303, 409 A.2d 362 (1979). The appellant must be given the benefit of every fact and reasonable inference arising from the evidence. *Id.*

## I.

In appellant's first issue he argues that an enforceable, "unilateral" contract was created when, in December of 1980, Netherton promised that he would be promoted to superintendent. He claims that in consideration for that promise he fully performed certain activities. Appellant alleges that: 1) he performed activities additional to his employment, such as teaching Costello the Montour opera-

tion and assuming greater responsibility over general operations; and 2) he forbore seeking other employment in reliance on the promise of promotion.

The law is clear that where there is a promise of an additional benefit in return for the performance by the promisee of a contractual duty which the promisee is already under obligation to the promisor to perform, the promise is without consideration and therefore legally unenforceable. *Nicolella v. Palmer*, 432 Pa. 502, 248 A.2d 20 (1968). In reviewing the record and appellant's own account of his meeting with Netherton, we find no evidence that the activities appellant performed, which he now claims were consideration, were distinct from or additional to the duties required of him in his position as assistant superintendent. The position was new and had no definite job description. The trial court's finding that appellant's enhanced activities, being performed concomitant with his appointment to assistant superintendent, were really activities entailed in that position, for which he was compensated by a $3,000 raise is fully supported by the record.

Appellant further contends that his forbearance from seeking other employment constitutes sufficient consideration for the promise of promotion. Appellant correctly states that forbearance in exercising a right may be deemed consideration; however, to be such the forbearance must be bargained for and given in exchange for the promise made by the promisor. *Cardamone v. University of Pittsburgh*, 253 Pa.Super. 65, 384 A.2d 1228 (1978) (The court held that forbearance from instituting a legal action was not consideration to make an agreement a binding contract where appellant did not intend or desire to elicit appellee's forbearance.) In the instant case, appellant presented no evidence that his forbearance was intended by Montour or bargained for in exchange for the promise of promotion. Appellant was at all times free to exercise his right to leave; therefore, his forbearance was not consideration which would

make the promise a binding contract.[1] We affirm the trial court's conclusion that as a matter of law, appellant did not present a case for submission to the jury on his claim for breach of contract.

## II.

■ In his second issue, appellant argues that the non-suit was improper because it is the exclusive function of the jury to determine the terms of an employment contract. Appellant is apparently arguing that the jury could have inferred an implied-in-fact contract term that appellant, as superintendent or in another position, would be employed until he retired or resigned. The obvious intent of this argument is to establish a definite term of employment with Montour, in some capacity, thereby excepting him from the rule applicable to at-will employees. We have reviewed the record and find no evidence meriting a submission of this question to the jury.

First, appellant's argument that his contract of employment as superintendent would have had an implied-in-fact term of duration based on custom, policy and practice is necessarily moot given our immediate finding that no such contract existed. Second, if appellant is arguing that his employment contract, for any position, contained an implied-in-fact term of duration, then the law is clear that he must rebut the presumption of at-will employment by showing facts and circumstances establishing some tenure of employment or by proving some additional consideration was rendered to support a definite term of employment. *Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306 (1986).

■ The question of whether an employment contract is at-will or not is one of interpretation, but the court may determine the issue where "the evidence is so clear that no reasonable man would determine the issue ... in any way

1. We note that appellant has presented evidence of detrimental reliance on the promise, however, he has not argued or pled a theory of promissory estoppel and we cannot raise it for him.

but one." *Darlington,* 350 Pa.Superior Ct. at 195, 504 A.2d at 312, *quoting,* 3.A. Corbin, *Corbin on Contracts* (1960). Definiteness is required to overcome the at-will presumption. *Darlington v. General Electric, supra.* Appellant contends that Netherton's promise and other representations made to him indicating that he was a good employee and that he would be promoted to superintendent and perhaps more, created in him an expectation of life long employment. In *Darlington, supra.,* the Court agreed with the holding in *Adams v. Budd Co.,* 583 F.Supp. 711 (E.D.Pa.1984), that an employee's reliance on the bare supposition that his position was expected to last until retirement was too vague and indefinite to establish a specific term of employment. Similarly, appellant's evidence of expectations alone offer only vague and conclusary contentions which are inadequate to create a binding obligation on appellees. Moreover, appellant in his brief and at trial has failed to identify what, if any, additional consideration was given in order to overcome the presumption of at-will employment. There is no evidence on record that appellant underwent any unusual hardships which he was not already bound to undertake and was compensated for in his regular employment. Likewise, there is no indication that his talents were unique such that they could be deemed additional consideration to support the theory that appellees intended to employ him until retirement or resignation. *See, Darlington,* 350 Pa.Superior Ct. at 199, 201, 504 A.2d at 314, 315 (Court outlines numerous examples of additional consideration, none of which are present here.) We conclude that, as a matter of law, appellant did not present sufficient evidence to overcome the presumption of at-will employment.

## III.

Appellant's remaining issues essentially deal with his tort claim for wrongful discharge. For the following reasons we are compelled to hold that the trial court correctly

granted appellee's motion for a compulsory non-suit on these issues.

First, appellant was never discharged, but was rather furloughed from his management position as assistant superintendent. We recognize, as appellant did at trial, that a furlough is not a discharge. The possibility remained that appellant might have been called back as assistant superintendent and in fact appellant's employment with Montour did not end at that point. Subsequent to his furlough, appellant was able to "bump" into the position of machinist-welder because he had retained his union rights, including seniority. At trial, appellant gave the following account of his termination. According to him there was already some friction between Costello and appellant over appellant's welding abilities when on September 27, 1984, out of malice Costello told him to perform an allegedly unnecessary welding task. Appellant refused, claiming that the task was not within his job category. Costello consequently gave appellant a letter of disqualification as a machinist-welder. Appellant signed the letter and left the property; that was his last day of work for Montour.

Thus, the second and more important fact is that appellant's termination, whether or not it was actually a "discharge," came when he held a job covered by the collective bargaining agreement between appellees and appellant's union. In *Phillips v. Babcock & Wilcox*, 349 Pa.Super. 351, 503 A.2d 36 (1986), our Court specifically addressed the issue of whether a union member, protected by the terms of a collective bargaining agreement, could file a wrongful discharge claim in tort against his employer. The Court held that "the tort of wrongful discharge is available only when the employment relationship is at-will." *Id*, 349 Pa. Superior Ct. at 355, 503 A.2d at 38. Appellant, at the time his employment was terminated, was not an at-will employee; he was contractually protected by a collective bargaining agreement and must seek redress through the agreement's grievance procedures. *Id*. Appellant was admittedly working a job under a collective bargaining agreement

when his employment ended and therefore any wrongs he may have suffered in that job must be remedied through the procedures established in that agreement.

Order affirmed.